USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: May 16, 2017

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------X

MERYS URENA,

                          Plaintiff,

                      -v-

NANY A. BERRYHILL, Acting Commissioner of
Social Security,

                         Defendant.

------------------------------------------------------------------X

16-cv-4194 (KBF)

MEMORANDUM
DECISION & ORDER

KATHERINE B. FORREST, District Judge:

      Plaintiff Merys Urena seeks review, pursuant to 42 U.S.C. § 405(g), of the decision by defendant Commissioner of Social Security ("Commissioner"), finding that she was not disabled and not entitled to Disability Insurance Benefits under Title II of the Social Security Act and Supplemental Security Income benefits under Title XVI of the Social Security Act. The parties have filed cross-motions for judgment on the pleadings. Plaintiff argues that the Commissioner made several errors in her decision and requests that the decision be reversed and plaintiff's claim be remanded for an award and calculation of benefits or, in the alternative, for further proceedings. The Commissioner opposes, arguing that the decision was legally correct and supported by substantial evidence.

      For the reasons set forth below, the Court GRANTS plaintiff Urena's motion for judgment on the pleadings and DENIES the Commissioner's cross-motion for judgment on the pleadings. The Court finds that there are gaps in the

administrative record that were not properly developed by the ALJ—specifically, those concerning Dr. Nunez's treatment notes and Mental Status Examination ("MSE") findings. Accordingly, as described below, this case is remanded for further proceedings consistent with this Opinion.

I. BACKGROUND

    A. <u>Procedural Background</u>

Plaintiff Merys Urena filed applications for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("Act") and Supplemental Security Income ("SSI") under Title XVI of the Act on October 28, 2010, alleging disability since January 1, 2009, because of depression, low back pain, and arthritis. (Tr. 60-61, 163-73, 196.) The Social Security Administration ("SSA") denied the applications. Plaintiff then requested an administrative hearing, which took place before an administrative law judge ("ALJ") on January 13, 2012. (Tr. 20-59.) The ALJ, before whom plaintiff and her attorney appeared, issued a decision finding that plaintiff was not disabled and not eligible for DIB and SSI. (Tr. 26-34.) The Appeals Council denied plaintiff's request for review (Tr. 1-8), and plaintiff thereafter filed a civil action. On February 11, 2015, the district court remanded the case for further administrative proceedings to consider plaintiff's mental impairments. (Tr. 403-36.)

Upon remand, a second hearing was held before an ALJ on January 27, 2016. (Tr. 345-69.) Plaintiff, who was represented by an attorney, appeared and testified; a vocational expert also testified. (Tr. 345-69.) On March 31, 2016, the ALJ again found that plaintiff was not disabled under the Act. (Tr. 370-95.) The ALJ's

2

decision became the final decision of the Commissioner of Social Security ("Commissioner"), and plaintiff filed this instant action on June 6, 2016. (ECF No. 1.) The period at issue is from January 1, 2009—plaintiff's alleged disability onset date—through the Commissioner's March 31, 2016, final decision.

B. <u>Plaintiff's Instant Motion</u>

Plaintiff filed her instant motion "to contest the decision of the Commissioner of Social Security . . . . that she is not disabled as a result of a severe psychiatric illness." (Memorandum of Law in Support of Plaintiff's Motion for Judgment on the Pleadings ("Plaintiff's Mem. in Supp."), ECF No. 16, at 1.) First, plaintiff argues that the ALJ's decision should be reversed because the ALJ violated the treating physician rule. (<u>Id.</u> at 15-26.) Specifically, plaintiff asserts that the ALJ improperly failed to give "controlling weight" to plaintiff's treating psychiatrist, Dr. Giovanny Nunez. (<u>Id.</u>) Second, plaintiff argues that the ALJ's assessment of the credibility of plaintiff's testimony was legally deficient. (<u>Id.</u> at 27-28.) Plaintiff asks the Court to reverse the Commissioner's decision and remand solely for the calculation of benefits or, in the alternative, remand to the Commissioner for a new hearing and decision. (<u>Id.</u> at 28-31.)

The Commissioner has opposed plaintiff's motion and has filed a cross-motion for judgment on the pleadings. The Commissioner argues that "the Commissioner's decision is supported by substantial evidence in the record, and is based upon the application of correct legal standards." (Memorandum of Law in Support of the Commissioner's Cross-Motion for Judgment on the Pleadings and in Opposition to Plaintiff's Motion for Judgment on the Pleadings ("Commissioner's Mem. in Supp."),

3

ECF No. 21, at 1.) Specifically, the Commissioner argues that the ALJ properly considered the medical evidence and opinions in the record and appropriately evaluated plaintiff's credibility. (Id. at 21-33.) The Commissioner asks the Court to affirm its decision or, in the event that the Court reverses, to remand for further proceedings. (Id. at 33-34.)

II. APPLICABLE LEGAL PRINCIPLES

    A. Judgment on the Pleadings

"After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). "The same standard applicable to Fed. R. Civ. P. 12(b)(6) motions to dismiss applies to Fed. R. Civ. P. 12(c) motions for judgment on the pleadings." Bank of N.Y. v. First Millennium, Inc., 607 F.3d 905, 922 (2d Cir. 2010) (citation omitted). Therefore, "[t]o survive a Rule 12(c) motion, the complaint 'must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" Id. (quoting Hayden v. Paterson, 594 F.3d 150, 160 (2d Cir. 2010)).

    B. The Disability Standard

The Commissioner will find a claimant disabled under the Act if he or she demonstrates an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The claimant's impairment must be "of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in

4

any other kind of substantial gainful work which exists in the national economy." Id. § 423(d)(2)(A). The disability must be "demonstrable by medically acceptable clinical and laboratory diagnostic techniques." Id. § 423(d)(3).

The Commissioner uses a five-step process when making disability determinations. See 20 C.F.R. §§ 404.1520, 416.920. The Second Circuit has described the process as follows:

> First, the Commissioner considers whether the claimant is currently engaged in substantial gainful activity. Where the claimant is not, the Commissioner next considers whether the claimant has a "severe impairment" that significantly limits her physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment that is listed in [Appendix 1]. If the claimant has a listed impairment, the Commissioner will consider the claimant disabled without considering vocational factors such as age, education, and work experience; the Commissioner presumes that a claimant who is afflicted with a listed impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, she has the residual functional capacity to perform her past work. Finally, if the claimant is unable to perform her past work, the burden then shifts to the Commissioner to determine whether there is other work which the claimant could perform.

Tejada v. Apfel, 167 F.3d 770, 774 (2d Cir. 1999) (citation and footnote omitted); see also Barnhart v. Thomas, 540 U.S. 20, 24-25 (2003); DeChirico v. Callahan, 134 F.3d 1177, 1179-80 (2d Cir. 1998). The claimant bears the burden of proof in steps one through four, while the Commissioner bears the burden in the final step. Talavera v. Astrue, 697 F.3d 145, 151 (2d Cir. 2012).

5

C.  Review of the ALJ's Judgment

The Commissioner and ALJ's decisions are subject to limited judicial review. The Court may only consider whether the ALJ applied the correct legal standard and whether his or her findings of fact are supported by substantial evidence. When these two conditions are met, the Commissioner's decision is final. See 42 U.S.C. § 405(g); Burgess v. Astrue, 537 F.3d 117, 127-28 (2d Cir. 2008); Veino v. Barnhart, 312 F.3d 578, 586 (2d Cir. 2002); Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999); Balsamo v. Chater, 142 F.3d 75, 79 (2d Cir. 1998) ("We set aside the ALJ's decision only where it is based upon legal error or is not supported by substantial evidence." (citation omitted)).

Substantial evidence means "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Pratts v. Chater, 94 F.3d 34, 37 (2d Cir. 1996) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)) (internal quotation marks omitted). If the Commissioner and ALJ's findings as to any fact are supported by substantial evidence, then those findings are conclusive. 42 U.S.C. § 405(g); Diaz v. Shalala, 59 F.3d 307, 312 (2d Cir. 1995).

While the Court must consider the record as a whole in making this determination, it is not for this Court to decide de novo whether the plaintiff is disabled. See Schaal v. Apfel, 134 F.3d 496, 501 (2d Cir. 1998); Beauvoir v. Chater, 104 F.3d 1432, 1433 (2d Cir. 1997); Veino, 312 F.3d at 586 ("Where the Commissioner's decision rests on adequate findings supported by evidence having rational probative force, we will not substitute our judgment for that of the

Commissioner."). The Court must uphold the Commissioner's decision upon a finding of substantial evidence, even when contrary evidence exists. See Alston v. Sullivan, 904 F.2d 122, 126 (2d Cir. 1990) ("Where there is substantial evidence to support either position, the determination is one to be made by the factfinder." (citation omitted)); see also DeChirico, 134 F.3d at 1182-83 (affirming an ALJ decision where substantial evidence supported both sides).

Finally, it is the function of the Commissioner, not the Court, "to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant." Aponte v. Sec'y, Dep't of Health & Human Servs., 728 F.2d 588, 591 (2d Cir. 1984) (quoting Carroll v. Sec'y of Health & Human Servs., 705 F.2d 638, 642 (2d Cir. 1983)) (internal quotation mark omitted); see also Gernavage v. Shalala, 882 F. Supp. 1413, 1419 n.6 (S.D.N.Y. 1995) ("Deference should be accorded the ALJ's [credibility] determination because he heard plaintiff's testimony and observed his demeanor." (citations omitted)). An ALJ's decision on credibility "must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." Soc. Sec. Ruling 96–7p, 61 Fed. Reg. 34484.

D. The Treating Physician Rule

"[T]he treating physician rule generally requires deference to the medical opinion of a claimant's treating physician," although an ALJ need not afford controlling weight to a treating physician's opinion that is "not consistent with other

7

substantial evidence in the record, such as the opinions of other medical experts." Halloran v. Barnhart, 362 F.3d 28, 32 (2d Cir. 2004) (citations omitted); see also Burgess, 537 F.3d at 128. An ALJ who does not accord controlling weight to the medical opinion of a treating physician must consider various factors, including "(i) the frequency of examination and the length, nature and extent of the treatment relationship; (ii) the evidence in support of the treating physician's opinion; (iii) the consistency of the opinion with the record as a whole; [and] (iv) whether the opinion is from a specialist." Halloran, 362 F.3d at 32 (citing 20 C.F.R. § 404.1527(d)(2)). After considering these factors, the ALJ must "comprehensively set forth reasons for the weight assigned to a treating physician's opinion." Id. at 33.

Although the ALJ will consider a treating source's opinion as to whether a claimant is disabled or able to work, the final responsibility for deciding those issues is reserved to the Commissioner, and the treating source's opinion on them is not given "any special significance." 20 C.F.R. § 416.927(d)(3); see also Soc. Sec. Ruling 96-5p, 1996 WL 374183, at *3 (July 2, 1996); Snell v. Apfel, 177 F.3d 128, 133 (2d Cir. 1999). When a finding is reserved to the Commissioner, "the Social Security Administration considers the data that physicians provide but draws its own conclusions as to whether those data indicate disability. A treating physician's statement that the claimant is disabled cannot itself be determinative." Snell, 177 F.3d at 133. It is the ALJ's duty, as the trier of fact, to resolve conflicting medical evidence. See Richardson, 402 U.S. at 399.

8

E.    The ALJ's Duty to Develop the Record

Although "[t]he claimant has the general burden of proving that he or she has a disability within the meaning of the Act," "the ALJ generally has an affirmative obligation to develop the administrative record." Burgess, 537 F.3d at 128 (citations and internal quotation marks omitted). SSA regulations require an ALJ to "inquire fully into the matters at issue and . . . receive in evidence the testimony of witnesses and any documents which are relevant and material to such matters." Id. (quoting 20 C.F.R. § 702.338). "In light of the ALJ's affirmative duty to develop the administrative record, 'an ALJ cannot reject a treating physician's diagnosis without first attempting to fill any clear gaps in the administrative record.'" Id. at 129 (citation omitted); see also Calzada v. Asture, 753 F. Supp. 2d 250, 277 (S.D.N.Y. 2010) ("If the ALJ is not able to fully credit a treating physician's opinion because the medical records from the physician are incomplete or do not contain detailed support for the opinions expressed, the ALJ is obligated to request such missing information from the physician." (citing Perez, 77 F.3d at 47)).

III.    DISCUSSION

Plaintiff advances two arguments in support of her position that the ALJ erred in finding that she was not disabled: (1) the ALJ improperly failed to give "controlling weight" to plaintiff's treating psychiatrist, Dr. Giovanny Nunez; and (2) the ALJ's assessment of the credibility of plaintiff's testimony was legally deficient. (See Plaintiff's Mem. in Supp. at 15-28.) As discussed below, the Court finds that the ALJ failed to fully develop the administrative record; the Court thus remands for the ALJ to do so and consider plaintiff's claim upon a full record.

9

A.  The ALJ's Decision

The ALJ evaluated plaintiff's claim pursuant to the five-step sequential evaluation process and concluded that plaintiff has not been under a disability within the meaning of the Act since January 1, 2009, the date of plaintiff's application. At step one, the ALJ found that plaintiff had not engaged in substantial gainful activity since January 1, 2009 (the application date). (Tr. 378.) At step two, he determined that plaintiff had the following severe impairments: major depressive disorder, hypertension, hypothyroidism, obesity, gastritis, degenerative joint disease of the right knee, a history of vertigo, and migraines. (Tr. 379.) The ALJ determined at step three that none of plaintiff's impairments, nor any combination of those impairments, was of a severity to meet or medically equal one of the listed impairments in Appendix 1 of the regulations. (Tr. 379)

Before proceeding to step four, the ALJ determined that plaintiff had the residual functional capacity to perform "medium work" as defined in the regulations, except that she must avoid working at unprotected heights or around hazardous machinery; the ALJ further determined that plaintiff perform the full range of only repetitive unskilled work that requires no more than occasional close interpersonal contact with supervisors and coworkers and no close interpersonal contact with the general public. (Tr. 380.) In making this finding, the ALJ considered plaintiff's symptoms, objective medical evidence and other evidence, as well as opinion evidence. The ALJ concluded that plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms, but further concluded that plaintiff's "statements concerning the

10

intensity, persistent and limiting effects are these symptoms are not entirely consistent with the record." (Tr. 385.) The ALJ also noted that his finding reflected "significant weight" given to the opinion of Dr. Gonzales; "significant weight" to the opinion of Dr. Matthew; "little weight" to the opinion of Dr. Gerhart; "substantial weight" to the opinion of Dr. Brewer; "partial, but not controlling weight" to the opinion of Dr. Nunez; "partial weight" to the opinion of Dr. Alexander; "partial weight" to the opinion of Dr. Mahony; and "limited weight" to the opinion of the DDS reviewing psychologist. (Tr. 386-87.)

At step four, the ALJ found that plaintiff was unable to perform any past relevant work. (Tr. 388.) Proceeding to step five, the ALJ determined that considering plaintiff's "age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that [plaintiff] can perform." (Tr. 388.) Thus, the ALJ found that plaintiff was not disabled under the Act and denied her claims. (Tr. 388-89.) The ALJ relied on the Medical-Vocational Guidelines as a framework for his decision and utilized a vocational expert. (Tr. 388.)

B.     Application of the Treating Physician Rule

Plaintiff's principal claim is that the ALJ failed to properly weigh the opinion evidence in the record. (Mem. in Supp. at 15-24.) Specifically, plaintiff claims that the ALJ failed to apply the treating physician rule in giving "partial, but not controlling weight" to Dr. Nunez plaintiff's treating psychiatrist. (Id.)

The ALJ did not assign Dr. Nunez's opinion controlling weight primarily because, in the ALJ's view, Dr. Nunez's opinion and clinical findings were in conflict

11

with her office notes. (Tr. 387.) The ALJ explained that "opinions by treating sources must be supported by substantial evidence, the best evidence of which are contemporaneous treatment notes, which in this case, do not support the medical source statements." (Tr. 387.) The ALJ further stated that "[i]f office notes are defective, the onus is on the provider to document actual defects." (Tr. 387.)

Plaintiff acknowledges that the sections of Dr. Nunez's notes that record plaintiff's findings on mental status examination ("MSE") are mostly normal. (Plaintiff's Mem. in Supp. at 14.) However, plaintiff explains that this is based, in part, on the computer program Dr. Nunez used for progress notes. (Id.) This computer program was "programmed to produce a normal MSE, and Dr. Nunez did not always remember to edit out normal findings when she should have.) (Id. (citing Tr. 683)) Plaintiff cites five examples. (Id.)

The Court has already noted that while "[t]he claimant has the general burden of proving that he or she has a disability within the meaning of the Act," "the ALJ generally has an affirmative obligation to develop the administrative record." Burgess, 537 F.3d at 128 (citations and internal quotation marks omitted). "In light of the ALJ's affirmative duty to develop the administrative record, 'an ALJ cannot reject a treating physician's diagnosis without first attempting to fill any clear gaps in the administrative record.'" Id. at 129 (citation omitted); see also Calzada v. Asture, 753 F. Supp. 2d 250, 277. Here, the Court finds that the ALJ erred in rejecting Dr. Nunez's diagnosis without first attempting to fill the clear gaps as a result of the erroneous progress notes. Presented with Dr. Nunez's

12

testimony regarding the computer program and the potentially incorrect MSE findings in the treatment notes, the ALJ should have inquired further.

C. Remedy

The Social Security Act directs that "[t]he court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405. The Second Circuit has explained that "where the administrative record contains gaps, remand to the Commissioner for further development of the evidence is appropriate." Quinion v. Apfel, 8 F. App'x 53, 54 (2d Cir. 2001); see Rosa, 168 F.3d at 82-83. That is, when "further findings would so plainly help to assure the proper disposition of [the] claim, we believe that remand is particularly appropriate." Id. (alteration in original).

The Court has noted the gaps in the administrative record that were not properly developed by the ALJ—specifically, those concerning Dr. Nunez's treatment notes and MSE findings. The Court thus remands this case to the ALJ for further proceedings consistent with this Opinion & Order.[1] Upon remand, the ALJ must appropriately apply the legal principles as described above.

SO ORDERED.

Dated: New York, New York
May 16, 2017

*[signature: K. B. Forrest]*

KATHERINE B. FORREST
United States District Judge

---

[1] The Court finds no error in the ALJ's assessment of plaintiff's credibility.